Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ÁNGEL MANUEL TORRES CUBANO<br><br>Apelante<br><br>v.<br><br>SUCESIÓN DE MIRIAM MAGDALENA DOMENECH ROSADO, COMPUESTA POR ISMAEL H. HERRERO DOMENECH<br><br>Apelada | KLAN202400366 | Apelación Procedente del Tribunal de Primera Instancia, Sala de SAN JUAN<br><br>Caso Núm.:<br>K AC2015-0501<br><br>Sobre:<br>Liquidación de cuota viudal usufructuaria; División de comunidad |

Panel integrado por su presidente el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

Mateu Meléndez, Jueza Ponente

### SENTENCIA EN RECONSIDERACIÓN

En San Juan, Puerto Rico, a 4 de febrero de 2025.

El 12 de abril de 2024, el Sr. Ángel Manuel Torres Cubano (en adelante, señor Torres o el apelante) sometió ante nosotros un *Recurso de Apelación* mediante el cual solicitó la revisión de la *Sentencia* emitida en el caso de autos por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI), el 9 de noviembre de 2023, notificada al día siguiente. Por virtud del aludido dictamen, se resolvió, entre otras cosas, que la cuota usufructuaria viudal que el apelante reclamó en su *Demanda* arrojaba un balance negativo de $26,531.55 y se le ordenó a este a pagar tal cantidad al Sr. Ismael Herrero Otero, más las costas y los gastos del litigio.

-I-

El 28 de mayo de 2015, el señor Torres presentó una *Demanda* sobre liquidación de cuota viudal usufructuaria en contra de la Sra. Miriam Magdalena Domenech Rosado, (en adelante, señora Domenech).[1] Allí,

---

[1] La reclamación se instó contra esta, por sí y en representación de la sucesión Miriam Herrero Domenech. Es menester señalar que, posteriormente durante el litigio, la señora

alegó que el 6 de septiembre de 2011, su esposa, la Sra. Miriam Herrero Domenech (en adelante, la causante) falleció intestada y dejó como únicos herederos a su madre, o sea, la demandada, y a él en la cuota viudal usufructuaria. Arguyó que no se estableció una cuota viudal usufructuaria, por lo que no había recibido su participación de esta. Enfatizó también haber realizado múltiples gestiones extrajudiciales, para lograr liquidar su acreencia, sin que se obtuviera resultado alguno. A su vez, reiteró que era su interés que se dividieran los bienes hereditarios y se adjudicara su participación de la herencia respecto a la cuota viudal usufructuaria. Como remedio, solicitó la suma de $9,500.00 por concepto de gastos legales y costas de litigio y, que se ordenara la división de la comunidad hereditaria.

La *Conferencia con Antelación a Juicio* del caso quedó señalada para el 28 de junio de 2022 y el *Juicio* en su fondo para el 24 de agosto de 2022. El 21 de junio de 2022, según le fue ordenado, las partes sometieron el *Informe de Conferencia Preliminar entre Abogados con Antelación al Juicio*. Más adelante, el 24 de junio de 2022, ambas partes presentaron su prueba documental.

De otra parte, el 28 de julio de 2022, el apelante presentó *Moción sobre Derecho Aplicable a la Conmutación del Usufructo Viudal de la Parte Demandante, Sr. Ángel Torres*. En síntesis, adujo que el único heredero de la causante era su hermano y, que este heredaba como colateral preferente y, no como ascendiente. A su vez, argumentó que el foro primario debía emitir una sentencia en la cual estableciera la cuantía total de la cuota viudal usufructuaria e incluyera el valor de las rentas no pagadas desde el día en que falleció su esposa el 6 de septiembre de 2011. Además, solicitó que se ordenara al señor Herrero a la conmutación de la deuda. Sostuvo que el apelado estuvo en control absoluto de los bienes y disfrutó de estos y sin

---

Domenech, falleció, habiéndole sucedido como único heredero su hijo, el Sr. Ismael Herrero Domenech (en adelante, señor Herrero o el apelado).

pagarle durante esos años. Indicó que, nunca hubo una intención de pagarle el usufructo correspondiente. Asimismo, esbozó que existía un enriquecimiento injusto por parte del apelado, toda vez que la ascendiente, madre de la causante, había fallecido.

Ese mismo día, el señor Herrero sometió una *Moción para Establecer Estado de Derecho Vigente* en la que planteó que, al fallecer la causante sin descendencia, su comunidad hereditaria se componía de su madre y heredera universal, la señora Domenech y del apelante, en cuanto a la cuota usufructuaria viudal. Asimismo, señaló que al fallecimiento de la señora Domenech, ya iniciado el pleito, la comunidad hereditaria de esta última estaba compuesta exclusivamente por él. Por consiguiente, y en virtud del derecho allí citado, el señor Herrero reclamó que el apelante comparecía a la comunidad hereditaria de la causante con ascendiente.

Llegado el día del juicio, las partes informaron haber acordado estipulaciones adicionales. Específicamente, estipularon que el monto del caudal de la causante ascendía a $1,491,399.00 y sometieron el caso.

El 9 de septiembre de 2022, el apelante presentó *Moción Sobre Derecho Aplicable a las Anualidades Adeudadas y Conmutaciones del Usufructo Viudal Correspondiente a la Parte Demandante* en la cual reiteró sus planteamientos anteriores. Nuevamente, como remedio, pidió que se dictara sentencia en la que se estableciera la cuota viudal usufructuaria que incluyera la partida de las rentas que no le fueron pagadas por 11 años, se ordenara la conmutación y el pago inmediato de su usufructo viudal.

En respuesta, el 15 de septiembre de 2022, el señor Herrero presentó su *Moción en Torno a la Conmutación y las Obligaciones del Caudal*. Adujo que, las partes acordaron que el monto total del caudal relicto de la causante era de $1,491,399.00, por lo que la partida a conmutarse era de $282,173.00. Asimismo, reiteró que el apelante aceptó la herencia respecto al usufructo viudal con ascendiente. Además, planteó que el Art. 765 del Código Civil

de 1930, 31 LPRA sec. 2415, disponía el pago de rentas procedía, únicamente, cuando la misma era vitalicia y para conmutar por ese método de pago, la cuota viudal usufructuaria. Argumentó que, el señor Torres retuvo la posesión y disfrute de propiedades inmuebles de la causante, devengando ingresos que no fueron compartidos con dicho caudal. Por todo lo anterior, esbozó que no procedía el pago de rentas desde la fecha del fallecimiento de la causante.

Atendido estos escritos, el TPI emitió la *Sentencia* apelada en la cual realizó las siguientes determinaciones de hechos:

1. El señor Ángel Torres Cubano contrajo nupcias con la señora Miriam M. Herrero Domenech (Causante), el 22 de septiembre de 2002, bajo el régimen de separación de bienes, otorgadas el 26 de agosto de 2002.

2. La Causante, la señora Miriam M. Herrero Domenech, nació el 3 de mayo de 1961 en San Juan, Puerto Rico; hija de Ismael H. Herrero Otero y Miriam Magdalena Domenech Rosado.

3. El señor Ángel Torres Cubano nació el 25 de diciembre de 1950.

4. La señora Miriam M. Herrero Domenech falleció intestada el 6 de septiembre de 2011.

5. Al momento del fallecimiento de la Causante, ésta estaba casada con el Sr. Torres.

6. La Causante no tuvo ni adoptó hijos.

7. A la Causante le sucedió en calidad de heredera universal su madre, Doña Miriam Magdalena Domenech Rosado (Sra. Domenech) y el Sr. Torres, en cuanto a la cuota usufructuaria viudal, conforme surge de la Resolución de Declaratoria de Herederos emitida en el caso civil número K JV2011-2444. Tomamos conocimiento judicial de dicha Resolución de Declaratoria de Herederos.

8. La Sra. Domenech, heredera universal de la Causante, falleció el 5 de mayo de 2017, sucediéndole como heredero, su hijo, el aquí demandando y reconviniente, Ismael H. Herrero Domenech (Sr. Herrero), conforme surge de la Resolución de Declaratoria de Herederos en el caso civil número K JV2017-1161. Tomamos conocimiento judicial de dicha Resolución de Declaratoria de Herederos.

9. La Causante falleció con ascendencia y sin descendencia y, mediante capitulaciones matrimoniales bajo el Código Civil de Puerto Rico, edición de 1930, según enmendado.

10. El caudal relicto de la Causante, conforme estipulado por las partes en el Informe de Conferencia con Antelación a Juicio, fechado 21 de junio de 2022, se compone de los siguientes activos y participaciones:

    a. 50% de participación en la residencia en la Urbanización las Cumbres, Rio Piedras, Puerto Rico, valorado en $92,500.

    b. Apartamento 18 en El Falansterio, Puerta de Tierra, San Juan, Puerto Rico, valorado en $50,000.

    c. 25% de participación en residencia en la Romany Park, Rio Piedras, Puerto Rico, valorado en $102,500.

    d. 25% de participación en apartamento #2, Condominio Atlantic, Luquillo, Puerto Rico, valorado en $37,500.

    e. 6.25% de interés en producto de venta de residencia Puigdoller, valorado en $4,101.

    f. Cuenta de inversiones en UBS Financial Services, valorado en $269,899.07.

    g. Fondos en cuenta de cheques en Doral Bank, valorado en $4,100.

    h. Cuenta de cheques en RG Premier Bank, valorado en $15,304.

    i. 7.75% de participación en producto de la venta de activo inmobiliario en Inversiones Cocoher.

    j. 6.25% de participación en Corcol Investment.

    k. Vehículo Toyota RAV4, Modelo 1996, valorado en $2,300.

    l. 25% de participación en el producto de Sentencia obtenida contra Correa Calzada, valorado en $100,000, neto de la porción proporcional de $18,750 por concepto de honorarios de abogado al Lic. Juan R. González, a saber $81,250.00.

    m. Producto obtenido de litigio contra Popular Securities, valorado en $2,907.

11. Las Partes de epígrafe estipularon el monto del caudal de la Causante en la cantidad de $1,491,399.00.

En virtud de las determinaciones de hechos formuladas, el foro primario resolvió que el señor Torres compareció a la herencia de la causante, en cuanto a la cuota usufructuaria viudal con ascendiente. En cuanto al cómputo de la cuota y su fórmula, el foro primario determinó que la mitad del caudal relicto correspondía a la herencia directa, toda vez que existía una ascendiente al momento del fallecimiento de la causante. Asimismo, concluyó que en el caso de epígrafe no existía controversia con relación a la fórmula a utilizarse para computar el usufructo viudal y, que dicha cifra resultante era la suma total capitalizable del usufructo.

Luego de esto, el TPI enunció que la calculadora viudal del Colegio de Notarios de Puerto Rico reflejó que, con un caudal ascendiente a $1,491,399.00, cuando el viudo era un varón de entre 70 y 75 años, la cantidad a conmutar era de $282,065.77. Acto seguido, señaló que otros activos y bienes fueron retenidos por el apelante, por lo que era obligatorio

realizar un ajuste del monto a conmutar. Listó estos bienes y activos de la siguiente manera:

1. $2,300, por concepto del valor del vehículo RAV4 retenido por el apelante;

2. $4,101, por concepto del balance disponible al fallecimiento de la causante en la cuenta bancaria de Doral Bank;

3. $15,304, por concepto de balance disponible al fallecimiento de la Causante en la cuenta bancaria de RG Bank;

4. $8,129 por concepto de reembolso del Departamento de Hacienda, retenido por el Sr. Torres;

5. $18,750, por concepto de la parte proporcional correspondiente al caudal de la causante de los gastos de honorarios de abogado del Lcdo. Juan Rafael González en el litigio contra Correa, Calzada;

6. $59,400, como valor asignado a la renta mensual de la propiedad ubicada en el Falansterio a base de un canon de $450 mensuales, por once (11) años transcurridos desde la muerte de la causante;

7. $49,500, por concepto de ingresos de renta del apartamento ubicado en Las Cumbres, pertenecientes a la Sucesión de la causante y retenidos por el Sr. Torres, a base de $750.00 mensuales, por el periodo de once (11) años transcurridos desde la muerte de la causante;

8. $79,200 por concepto de uso y disfrute del Sr. Torres de la mitad de la propiedad de Las Cumbres, correspondiente a la Sucesión de la Causante, a base de $600.00 mensuales, por once años;

9. $162,969, por la proporción correspondiente a la Sucesión de la causante de la contribución básica alterna sobre el 24% de participación de la causante en los beneficios de la venta de Inversiones Cocoher.

Cónsono con lo anterior, el TPI concluyó que la operación matemática, arrojaba un balance negativo para el señor Torres de $116,587.23. No obstante, determinó que al apelante le correspondía un crédito por el pago de la hipoteca de la propiedad ubicada en el Falansterio, ascendente a $13,821.72 y otro por $76,233.96, en concepto de la mitad del pago mensual correspondiente a la sucesión de la causante de la hipoteca sobre la propiedad ubicada en las Cumbres. Por lo anterior, el foro primario razonó que el resultado de la aplicación de créditos a favor del apelante resultaba en una conmutación total y final negativa para el señor Torres por $26,531.55. Así pues, resolvió que la cuota usufructuaria viudal del señor

Torres, resultaba en tal balance negativo y ordenó al apelante a pagar dicha suma al señor Herrero, más las costas y los gastos del litigio. A su vez, ordenó al señor Torres a suscribir los documentos para el perfeccionamiento de los títulos de propiedad de los inmuebles que correspondían a la sucesión de la causante, compuesta por el apelado.

Inconforme, el 27 de noviembre de 2023, el señor Torres presentó su *Reconsideración de Sentencia y en Solicitud de Determinaciones de Hecho Adicionales Conforme a la Regla 43.1 de las de Procedimiento Civil*. En síntesis, solicitó que el foro primario emitiera determinaciones de hechos y de derecho adicionales con relación a los créditos concedidos, el derecho del viudo a las anualidades dejadas de percibir desde la muerte de la causante y, la comparecencia del viudo a la conmutación sin descendientes ni ascendientes. El 18 de diciembre de 2023, el señor Herrero presentó su *Moción en Oposición a* "Reconsideración *de Sentencia y en Solicitud de Determinaciones de Hecho Adicionales Conforme a la Regla 43.1 de las de Procedimiento Civil*" en la cual reiteró sus argumentos iniciales. Sostuvo que las partes estipularon el monto del caudal, por lo que el apelante no podía ir contrario a sus propios actos. Asimismo, enfatizó que, previo a la fecha del juicio, solicitó reabrir el descubrimiento de prueba. Sin embargo, el apelante se opuso. Por tanto, indicó que no procedían los argumentos presentados en la *Reconsideración de Sentencia*, toda vez que eran tardíos.

El 14 de marzo de 2024, el TPI declaró sin lugar la *Solicitud de Reconsideración*. Inconforme aun, el apelante presentó el recurso que nos ocupa y señaló los siguientes señalamientos de error:

> Erró el honorable Tribunal de Primera Instancia, Sala de San Juan, en su Sentencia del 9 de noviembre de 2023, al computar el usufructo viudal del demandante recurrente con ascendiente cuando concurre al momento de conmutar la herencia, solo con hermano de la causante.

> Erró el Tribunal de Primera Instancia, en la apreciación de la prueba ante su consideración, al imputar la mayoría de los créditos exclusivamente a favor de la parte demandada recurrida, ignorando la prueba estipulada y anunciada en el informe de

conferencia con antelación a juicio y la prueba presentada por la parte demandante recurrente sobre sus créditos, resultando en un cómputo erróneo y negativo del usufructo del demandante-recurrente, demostrando abuso de discreción, absoluto perjuicio y parcialidad en su Sentencia.

El 10 de mayo de 2024, el apelado presentó su alegato en oposición. El 8 de noviembre de 2024, emitimos *Sentencia.* Allí, resolvimos confirmar el dictamen apelado. El 27 de noviembre de 2024, el apelante solicitó la reconsideración de dicho dictamen. Allí, señaló que contrario a lo enunciado en nuestro dictamen, en el caso de autos el TPI no recibió prueba testifical, sino que resolvió las controversias basándose únicamente en la prueba documental sometida por las partes. A su vez, expuso que, como reclamó en su apelación, la apreciación del foro primario de los documentos sometidos fue errada y procedió a reproducir los argumentos levantados en su comparecencia inicial. Así pues, reclamó que el cómputo realizado por el TPI es contrario a la evidencia sometida por las partes e impugnó ciertos ajustes efectuados por el tribunal. Específicamente, en cuanto al ingreso por arrendamiento, a un reintegro de Hacienda, a ciertos honorarios de abogado y contribución básica alterna en cuanto a la venta de un inmueble propiedad de Inversiones Cocoher, SP.

Atendida la misma, concedimos término a la parte apelada para que se expresara y así lo hizo.

II.

En este caso, los hechos que motivaron la *Demanda* ocurrieron previo a la entrada en vigor del nuevo Código Civil de 2020, hoy vigente. Por ende, a la controversia ante nos le aplican los preceptos del derogado Código Civil de 1930. Siendo ello así, el derecho citado y aplicado en este caso será aquel vigente al momento de los hechos, entiéndase el Código Civil de 1930.

-A-

Son legitimarios del causante, sus descendientes y, en ausencia de éstos sus ascendientes.[2] Asimismo, el Cónyuge supérstite es heredero forzoso, más su cuota es en usufructo.[3] La cuota en usufructo a la que el cónyuge viudo tendrá derecho será igual a la que por legítima corresponda a cada uno de sus hijos o descendientes no mejorados. Cuando sobrevive un solo hijo, el viudo o viuda tendrá el usufructo del tercio destinado por la ley a constituir la mejora, conservando aquél la nuda propiedad, hasta que por fallecimiento del cónyuge supérstite se consolide en él el dominio. 31 LPRA Sec. 2411. La porción hereditaria asignada en usufructo al cónyuge viudo deberá sacarse de la tercera parte de los bienes que la ley permite al testador destinar a la mejora de los hijos. 31 LPRA Sec. 2412.

Ahora, la participación que le corresponde al viudo o la viuda en usufructo viudal dependerá con quién este concurra al llamado hereditario. Así pues, cuando el testador deja ascendientes, pero no descendientes, el cónyuge sobreviviente tendrá derecho a la tercera parte de la herencia en usufructo, sacándose este de la mitad libre. 31 LPRA sec. 2413. Los herederos, podrán satisfacer al cónyuge su parte de usufructo, asignándole una renta vitalicia, o los productos de determinados bienes, o un capital en efectivo. Mientras esto no ocurra, todos los bienes de la herencia están gravados por el usufructo viudal. Clavelo Pérez v. Hernández García, *supra;* 31 LPRA Sec. 2415.

-B-

En materia de apreciación de prueba, los foros apelativos debemos brindar deferencia a las determinaciones de hechos formuladas por el foro judicial primario. Serrano Muñoz v. Auxilio Mutuo, 171 DPR 717, 740 (2007); Rolón v. Charlie Car Rental, Inc., 148 DPR 420, 433 (1999). La norma

---

[2] Clavelo Pérez v. Hernández García, 177 DPR 822 (2010) al citar el Artículo 736 del Código Civil de 1930, 31 LPRA Sec. 2362.
[3] *Íd.* Véase también Artículo 761 del Código Civil de 1930, 31 LPRA, Sec. 2411.

general es que, si la actuación del foro *a quo* no está desprovista de una base razonable y no perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de primera instancia, a quien le corresponde la dirección del proceso. Sierra v. Tribunal Superior, 81 DPR 554, 572 (1959). Ahora bien, la regla de deferencia antes descrita se exceptúa cuando se trata de determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos están en idéntica posición que el tribunal inferior al examinar ese tipo de prueba. González Hernández v. González Hernández, 181 DPR 746 (2011).

III.

En el caso de autos, en su primer señalamiento de error, el apelante alegó que el foro primario erró al computar el usufructo viudal con ascendiente cuando concurre al momento de conmutar la herencia, únicamente con el hermano de la causante. En la discusión de este, asevera que "siendo a la fecha de la conmutación (SENTENCIA) donde se estableció el monto del caudal conforme dispone la ley, el hermano de la causante era el único heredero de la causante". Por esta razón clama que le corresponde la mitad de la herencia en usufructo.

En cuanto a este señalamiento de error, en la *Sentencia* emitida el 8 de noviembre de 2024, establecimos que el apelante advino a su derecho hereditario sobre la cuota viudal usufructuaria **desde la fecha en que falleció la causante**. Igualmente, detallamos que, en esa misma fecha, la señora Domenech- madre de la causante y quien era ascendiente de esta- compareció a dicha sucesión como heredera universal. Por tal razón, allí concluimos que, al fallecimiento de la causante, el apelante concurrió al complejo hereditario con la señora Domenech. De otra parte, en dicha ocasión, tras destacar que el señor Herreno no fue heredero de la causante, sino que heredó en representación de su madre, concluimos que procedía la conmutación del usufructo viudal del apelante, compareciendo con

ascendiente y sujeto a las disposiciones establecidas en el Código Civil. Hoy, sostenemos tal decisión.

De otra parte, en su segundo señalamiento de error, el apelante adujo que el foro primario erró al apreciar la prueba e imputar la mayoría de los créditos a favor del apelado, ignorando la prueba estipulada y anunciada en el *Informe de Conferencia con Antelación a Juicio* y la prueba presentada con relación a sus créditos, resultando en un cómputo erróneo y negativo del usufructo, demostrando abuso de discreción, perjuicio y parcialidad.

En cuanto a este segundo señalamiento de error, en la *Sentencia* dictada el 8 de noviembre de 2024, señalamos que en el caso de autos se celebró un juicio en su fondo el 24 de agosto de 2022, en el cual se presentó prueba documental **y testifical** y que allí las partes estipularon el caudal relicto de la causante, sus activos y participaciones. Asimismo, destacamos que el foro primario realizó las determinaciones de hechos basadas en la prueba documental **y testifical**. También, hicimos notar que el apelante no había presentado una transcripción de dicha prueba oral, ni nos había persuadido de evaluar de forma diferente la documentación presentada, de forma que nos mueva a modificar o revocar las determinaciones de hechos del foro primario. Basándonos en tales observaciones y en que, como foro apelativo, por lo general no debemos intervenir en las actuaciones de los foros primarios en ausencia de prejuicio, parcialidad o error en la aplicación de derecho, resolvimos que este segundo error no había sido cometido.

Ahora bien, al evaluar la reconsideración que el apelante sometió frente a nuestra *Sentencia* del 8 de noviembre de 2024, advertimos que es correcto como señala este, que si bien en el caso se citó a una vista en su fondo, el día de dicha audiencia las partes comparecieron ante el tribunal, habiéndose informado estipulaciones adicionales, el caso quedó sometido exclusivamente con la evidencia documental y los informes periciales ya

sometidos, por lo que no había necesidad de someterse una transcripción de la prueba oral.

Luego de evaluar los documentos contenidos en el legajo apelativo, no encontramos en los planteamientos levantados por el apelante razón por la cual debamos intervenir con la aplicación de créditos en favor del apelante por el pago de la hipoteca de la propiedad ubicada en El Falansterio o aquel sobre la propiedad de Las Cumbres efectuada por el TPI. Tampoco hallamos en estos motivos por los que intervenir en cuanto al ajuste por reembolso recibido del Departamento de Hacienda o aquel por contribución básica alterna.

Un examen detenido de los informes periciales sometidos ante la consideración del TPI y restantes documentos que componen el apéndice nos permite estimar que los créditos sí reconocidos al apelante por pagos a hipotecas fueron producto de la adjudicación del valor probatorio que el tribunal atribuyó al sinnúmero de papeles sometidos por **ambas** partes. Asimismo, ocurre en cuanto al ajuste por reembolso del Departamento de Hacienda retenido por el apelante.[4]

El apelante no incluye argumento alguno que impugne la atribución valorativa efectuada por la juzgadora de hecho, de forma que nos sintamos persuadidos a evaluar de forma diferente la prueba valorada por el TPI. Más bien, se limita a argumentar que la decisión judicial en cuanto a estas partidas obvió el contenido del informe pericial que su perito, el Lcdo. Antonio Bauzá Santos sometió y sus anejos. Ello, sin más, no es suficiente para derrotar la adjudicación de evidencia documental efectuada en el caso.

De otra parte, sobre el ajuste en concepto de contribución básica alterna por $162,969.00, no existe controversia que en el caso que se efectuó

---

[4] Nótese que el inciso 11 de las Anotaciones del informe pericial preparado por el CPA Héctor M. Sánchez Moll señala que el reintegro emitido a nombre del apelante fue consecuencia de la presentación conjunta de la planilla de contribución sobre ingresos del año 2011 que este hizo y que este debió ser recibido en su totalidad por la Sucesión Miriam M. Herrero Domenech.

la venta de un activo perteneciente a Inversiones Cocoher y que la misma se llevó a cabo en el año 2020.[5] El apelante asevera que el expediente judicial no contiene documento alguno del cual surja la partida de contribución básica alterna por lo que el foro primario no debió considerarla. A su vez, expone que dicha cantidad fue meramente alegada por la parte apelada en la *Moción en Torno a Conmutación y las Obligaciones del Caudal* que presentó el 15 de septiembre de 2022. Sin embargo, notamos que no niega que, como informó la parte apelada en ese escrito, el monto de la causante en dicha venta **estipulado** ascendió $679,037.50.[6] La contribución básica alterna aplicable a dicha suma es una información de fácil corroboración. Basta, por ejemplo, buscar el formulario de planilla contribución sobre individuos para el año contributivo 2020 y el folleto de instrucciones para conocer que el tipo contributivo aplicable al ingreso neto a contribución básica alterna en exceso de $250,000.00 es 24%.

Ahora bien, coincidimos con el apelante en cuanto a que el ajuste por honorarios de abogados por $18,750.00 fue aplicado doblemente. Así, podemos ver que, al listar dentro de los activos de la apelante la participación correspondiente a la sentencia obtenida contra Correa Calzada, se restó la cantidad de $18, 750.00 por honorarios de abogados, valorizándose luego de ello el activo en $81,250.00. Sin embargo, y sin explicación alguna, el TPI incluyó nuevamente un descuento por la misma suma y el mismo concepto. Por tanto, modificamos la sentencia a los efectos de eliminar dicha partida de los ajustes al monto a conmutar. Lo anterior, causa que el balance negativo en la cuota usufructuaria del apelante sea $8,**784**.00.[7]

---

[5] Tal hecho es inclusive admitido por el propio apelante en la página 8 de su recurso de Apelación.

[6] Desconocemos si el apelante se opuso a dicho escrito y negó lo allí aseverado, pues el apéndice que este sometió no contiene oposición u objeción alguna sobre el mismo.

[7] La suma de los ajustes listados en la *Sentencia,* sin incluir los honorarios de abogado, totalizan **$380,903.00**. Por tanto, si al monto a conmutar establecido en el dictamen, o sea $282,065.00, se le resta el valor total de los ajustes, entiéndase los $380,903.00, hay un balance negativo de **$98,838.00**. Sin embargo, al aplicar a dicha cantidad los créditos que sí

IV.

Por los fundamentos antes expuestos, declaramos **Ha Lugar la Moción de Reconsideración** sometida por el apelante. En consecuencia, y según arriba explicamos, **MODIFICAMOS** la *Sentencia* apelada y así modificada se confirma.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

le fueron reconocidos al apelante ($90,054.00), obtenemos el balance negativo de $8,784.00) arriba informado.